**E.M.F. and T.N.F., Petitioners-Appellees,**

**v.**

**N.N., Respondent-Appellant.**

**No. 84CA0412.**

Colorado Court of Appeals,
Div. II.

Aug. 29, 1985.

Rehearing Denied Oct. 17, 1985.

Certiorari Denied (N.N.) April 7, 1986.

Bonham & Peake, Cheryl E. Peake, Denver, for petitioners-appellees.

David B. Savitz, Denver, for respondent-appellant.

KELLY, Judge.

Respondent, N.N., appeals the jury verdict finding that he is the father of the minor child, T.N.F., arguing that the trial court erred in admitting into evidence the results of the human leukocyte antigen test, in denying his motion for new trial based on jury misconduct and on newly discovered evidence, and in granting attorney fees and court costs to the petitioner, E.M.F. We affirm.

E.M.F. filed this paternity action alleging that N.N. was the biological father of her child, T.N.F. The parties, with their respective attorneys, stipulated to obtaining blood tests including human leukocyte antigen, HLA, testing prior to trial. The results of the HLA test indicated that there was a 98.9539% probability that N.N. was the biological father of the minor child. Thereafter, N.N. filed a motion to exclude the HLA test results from admission into evidence. The trial court denied that motion. After trial to a jury, N.N. was found to be the father of the minor child.

## I.

N.N. first argues that the trial court erred in admitting the results of the HLA test into evidence because the HLA technique is not a blood grouping test within the meaning of § 13–25–126, C.R.S., and is not scientifically reliable. We need not decide whether this statute encompasses HLA testing.

■ The statute does not exclude the admissibility of other types of tests, and § 19–6–113(1), C.R.S., which governs evidence relating to paternity, specifically provides that evidence relating to paternity may include:

"(d) Medical or anthropological evidence relating to the alleged father's paternity of the child based on tests performed by experts....

(e) All other evidence relevant to the issue of paternity of the child."

This language is sufficiently broad to encompass HLA tests.

## II.

N.N. next argues that the results of the HLA tests are not scientifically reliable. We disagree.

■ The most widely used standard for determining the admissibility of a new scientific technique was enunciated in *Frye v. United States*, 293 Fed. 1013 (D.C.Cir. 1923). The *Frye* test has been adopted by Colorado courts. *People v. Anderson*, 637 P.2d 354 (Colo.1981); *People v. Quintanar*, 659 P.2d 710 (Colo.App.1982). *Frye* requires that, before a scientific opinion may be received as evidence at trial, the basis of that opinion must be shown to be generally accepted as reliable within the expert's particular scientific field. Thus, if the validity of a new scientific technique has not been generally accepted or is only regarded as an experimental technique, expert testimony based upon its results should not be admitted into evidence. *Frye, supra*. The *Frye* standard, however, does not demand infallibility as a condition to admitting scientific evidence. *United States v. Alexander*, 526 F.2d 161 (8th Cir.1975).

The testimony of the experts here shows that the HLA test is a tissue typing test which was developed as a means of reducing incidents of rejection of organ transplants. The HLA test is based on the identification and typing of antigen markers found in white blood cells and other tissues of the body. It is generally performed on white blood cells, but may be done with other body tissues. *Crain v. Crain*, 104 Idaho 666, 662 P.2d 538 (1983). The basic theory is that by identifying the antigen markers of the child and of the mother, the child's antigen genetic markers which can only be inherited from the father can be determined. Thus, the father can usually be identified to a high degree of certainty. *Phillips v. Jackson*, 615 P.2d 1228 (Utah 1980).

■ Currently, pursuant to statute or case law, the results of HLA testing to determine paternity are admissible in at least thirty-five states and in the District of Columbia. Kolko, *Admissibility of HLA Test Results To Determine Paternity*, 9 Fam.L.Rep. 4009 (1983). The HLA test has been described as an approved and reliable test for determining paternity in articles appearing in both medical and legal periodicals. *Phillips v. Jackson, supra*. As early as 1976, the American Bar Association approved HLA test results as a means of determining paternity. Abbott, *Joint AMA—ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage*, 10 Fam.L.Q. 247 (1976). *See also Callison v. Callison*, 687 P.2d 106 (Okla.1984); *Tice v. Richardson*, 7 Kan. App.2d 509, 644 P.2d 490 (1982); *Turek v. Hardy*, 312 Pa.Super. 158, 458 A.2d 562 (1983).

■ Our examination of the current literature and case law of other jurisdictions indicates that HLA tests are now generally accepted in the scientific community as reliable evidence on the issue of paternity. The test is capable of establishing either that an individual could not be the father of a certain child, or that the probability that he is the father exceeds 90%. The admission of scientific proof with such a high

degree of certainty as HLA tests provides relevant evidence and aids the trier of fact in deciding the case. *See Callison, supra; Cramer v. Morrison,* 88 Cal.App.3d 873, 153 Cal.Rptr. 865 (1979).

### III.

N.N. next argues that the trial court erred in denying his motion for new trial based on juror misconduct. We disagree.

■ N.N. contends that one juror was not candid during voir dire and that another juror was coerced and compelled into acquiescing in the verdict. The only support cited for these propositions is an affidavit filed by a juror after the trial and the testimony of several jurors at the hearing on the motion for new trial. Both the affidavit and the testimony rely entirely on the discussions and arguments between the jurors during deliberations. It has been repeatedly held that arguments, discussions, and reasons advanced by jurors while considering their verdicts may not be used to impeach a verdict returned by them. *Noell v. Interstate Motor Lines, Inc.,* 166 Colo. 494, 444 P.2d 631 (1968). Absent a clear showing of abuse of discretion, we decline to reverse the trial court's denial of a motion for new trial. *First National Bank v. Campbell,* 198 Colo. 344, 599 P.2d 915 (1979). No such showing has been made here.

### IV.

N.N. also argues that the trial court erred in denying his motion for new trial based on newly discovered evidence. We disagree.

Prior to the trial in this case, N.N. was named in another paternity action in California although the child in the California suit was not born until the trial was completed in this case. After N.N. received the results of the HLA tests in the California case, he stipulated to paternity in that case for the purpose of temporary orders including child support.

N.N.'s argument is based on the discrepancies between the results of an HLA test performed on the child who is the subject of this case and those of an HLA test performed on the child who is the subject of the California paternity case. In part, his argument is that, because it is expected that the children of the same father will have the same paternal antigen markers, and since the California child and the Colorado child had different paternal antigen markers, N.N.'s paternity of the California child tends to negate his paternity of the Colorado child. We conclude that N.N.'s evidence of the California test results is not relevant.

■ A motion for a new trial based on newly discovered evidence may be granted only if there is newly discovered evidence which could not have been discovered in the exercise of reasonable diligence at the time of trial, if the evidence is material to the issue before the court, and if the evidence would probably change the result of the trial. *Phillips v. Monarch Recreation Corp.,* 668 P.2d 982 (Colo.App.1983).

In order to support an order for a new trial on the ground of newly discovered evidence, evidence should be relevant to the issues before the trial court. *Brown v. Bertrand,* 254 Minn. 175, 94 N.W.2d 543 (1959). It should appear positively, and not merely by conjecture and speculation, that evidence will be produced which is material to an issue determined adverse to the movant. *Minder v. Peterson,* 254 Minn. 82, 93 N.W.2d 699 (1958). "Material evidence" is evidence which is relevant and goes to substantial matters in dispute, or has a legitimate and effective influence or bearing on the decision in the case. *City of Winter Haven v. Tuttle/White Constructors Inc.,* 370 So.2d 829 (Fla.Dist.Ct.App.1979).

■ Although N.N. states in his affidavit in support of his motion that he has stipulated to paternity in the California case for the purposes of temporary orders, there is nothing in the record to show that N.N. has been adjudicated to be, or has admitted that he is, the father of the California child. In the absence of such evidence, the discrepancies between the Cali-

fornia child's HLA test results and the Colorado child's HLA test results are not probative. Therefore, the trial court properly denied N.N.'s motion for new trial based on newly discovered evidence.

## V.

■ Finally, N.N. argues that counsel for E.M.F. made an inadequate showing as to the reasonableness of attorney fees and costs. This argument is without merit. Here, the trial court's award of attorney fees is supported by the evidence, and therefore, will not be disturbed on appeal. *See Montgomery Ward & Co. v. State Department of Revenue,* 675 P.2d 318 (Colo.App.1983).

Judgment affirmed.

BABCOCK and METZGER, JJ., concur.